UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action Number: 1:23-cv-02266-CNS-NRN

JEANETTA VAUGHN

       Plaintiff,

v.

JP MORGAN CHASE & CO. D/B/A CHASE BANK; A CORPORATION;
TRINA PELECH, AN INDIVIDUAL;

       Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO COMPEL ABRITRATION AND STAY PROCEEDINGS**

---

Nowhere in Defendant JP Morgan Chase & Co's Deposit Account Agreement ("Chase Bank" and "DAA" respectively) does the bank mention discrimination, civil rights, defamation, or tort-based actions. Plaintiff Jeanetta Vaughn's agreement to arbitrate, as Defendant Chase Bank itself concedes, was expressly and unambiguously limited to disputes with respect to her "deposit account, transactions involving [her] deposit account, safe deposit box, and any related services with us..." Such services do not include race discrimination, having the police called on one, or being falsely and defamatorily accused of a crime. No reasonable individual would interpret "account services" to include such conduct, nor does Defendant Chase Bank claim as much.

Like a hand from beyond the grave, Defendant Chase Bank seeks after the fact to reinterpret its arbitration agreement to expand the scope well beyond the plain meaning and context of the provisions. To allow Chase Bank to arbitrarily interpret its DAA to include discrimination, tort, and defamation claims contrary to the language of the DAA's arbitration provisions effectively undermines the rights of tens of millions of Chase members. Contravening public policy, Chase Bank further argues that any actions taken by its employees or agents, such as Defendant Trina Pelech, are immune from action in court, no matter how egregious or outside the scope of employment or services their conduct is, further eroding the rights of millions. For these reasons and others described below, Defendants' Motion to Compel Arbitration should be rejected.

## FACTUAL BACKGROUND

Plaintiff Jeanetta Vaughn alleges in her Complaint as follows: On the morning of June 9, 2022, Jeanetta Vaughn, a sixty-one-year-old Black woman, walked into a Chase branch located at 1101 South Buckley Road in Aurora, Colorado to withdraw money from her Chase account and to obtain personal counter checks. Complaint, ¶¶ 14-22. Ms. Vaughn took a seat in the lobby to unlock her account using the Chase Mobile phone application. *Id*. at ¶¶ 24-27. As she proceeded

to unlock her account, she was approached, within moments, by Trina Pelech, who is a White, female, Chase branch manager. *Id*. at ¶ 30; *see* **Ex. 1**, *Chase Video Footage*.[1] Ms. Pelech loudly asked Ms. Vaughn whether she could help her with something, to which Ms. Vaughn responded that she did not need assistance and calmly explained that she needed to unlock her card. *Id*. at ¶ 32. Instead of accepting Ms. Vaughn's response, Ms. Pelech raised her voice angrily and told Ms. Vaughn that she was not welcome at the branch and threatened to call the police. *Id.* at ¶ 36.

Ms. Vaughn remained seated until two Aurora police officers arrived. *Id.* at ¶ 59. The officers told Ms. Vaughn they were responding to a report of trespassing. *Id.* at ¶ 60. One of the officers then spoke with Ms. Pelech who alleged Ms. Vaughn said, "Leave me alone, I'm busy, when I'm ready, I'll come up." *Id*. at ¶ 70. On the bodycam footage, Ms. Pelech made this statement while mimicking how Black women supposedly speak, with her hand raised, her neck swinging, and her face fixed into a scowl. *Id.* at ¶ 71; **Ex. 2**, *Officer Video Footage*.

Ms. Pelech further told the officers that Ms. Vaughn was being rude and that she told Ms. Vaughn that she was not welcome there. *Id*. at ¶ 73; *see* **Ex. 2**, *Officer Video Footage*. The officer told Ms. Pelech, "The last resort is putting my hands on her, charging her with trespassing and throwing her out of the bank especially if she is a customer here." Complaint, at ¶ 78. Both the officer and Ms. Pelech agreed that Ms. Vaughn was not a danger, which is contrary to the 911 call Ms. Pelech made describing Ms. Vaughn as aggressive. *Id*. at ¶¶ 79-81; *see* **Ex. 2**, *Officer Video Footage*. Before ending the first conversation with Ms. Pelech, the officer told her, "Being rude in the bank is not a matter for law enforcement." Complaint, at ¶¶ 82-83. After explaining Ms. Pelech's position with Ms. Vaughn, the officer spoke with Ms. Pelech again and told her that he

---

[1] The video and audio exhibits referenced herein will be conventionally submitted to the Court.

believed Ms. Vaughn felt singled out because she was African American. *Id.* at ¶ 105. Ms. Pelech dramatically rolled her eyes and stated, "That's always the excuse…" *Id*. at ¶ 106; **Ex. 2**, *Officer Video Footage*. The officer informed Ms. Pelech that they were not going to make her leave because she was a customer, "We're going to go wait in our car for her husband to get here and then if you tell her to leave, she said she'll leave." Complaint, at ¶ 112. Officer Gramse apologized for what happened and Ms. Vaughn was then forced to leave the Chase branch. *Id.* at ¶¶ 120-121.

Based on these actions by Defendants, Ms. Vaughn has brought four claims for relief including race discrimination in public accommodation against Chase Bank under the Colorado Anti-Discrimination Act ("CADA"), and claims against both Defendants under 42 U.S.C. § 1981, negligent infliction of emotional distress, and defamation per se. *Id.* at ¶¶ 132-176. Ms. Vaughn signed the DAA to open her Chase account. The DAA limits arbitration to disputes arising from the agreement and services provided by Chase Bank. It states:

> You and we agree that upon election of either of us, any **dispute relating in any way to your account or transactions** will be resolved by binding arbitration as discussed below. And not through litigation in any court (except for matters in small claims court).
> …
>
> **What claims or disputes are subject to arbitration?**
>
> Claims or disputes between you and us **about your deposit account, transactions involving your deposit account, safe deposit box, and any related services with us** are subject to arbitration. Any claims or **disputes from or relating to this agreement, any prior account agreements between us, or the advertising, the application for, or the approval or establishment of your account** are also included…
>
> *Id.* (emphasis added). The DAA in place during the dates relevant to Ms. Vaughn's case

includes identical language in its arbitration provisions. *See* ECF 19-4, *Motion*, at 26. The language in the arbitration provision makes no mention of arbitrating claims outside of disputes over accounts, transactions with those accounts, safety deposit boxes, and similar services, including disputes relating to the DAA or prior agreements.

## LEGAL ARGUMENT

Defendants argue that Ms. Vaughn's claims – against both of them – are each and everyone subject to arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2. *See* ECF 19; *Motion*, at 11-21. But notwithstanding the recent trend to broadly construe the scope of the FAA, there are nonetheless limits to its applicability. *See Moffett v. Life Care Centers*, 187 P.3d 1140, 1143 (Colo. App. 2008) (when the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision, the court may properly refuse to compel arbitration.) "The party attempting to compel arbitration bears the burden of 'demonstrating a valid arbitration agreement' exists." *Brock v. Flowers Food, Inc.*, Civ. No. 122-cv-02413, 2023 WL 3481395, at *2 (D. Colo. May 16, 2023); *see also Moffett*, 187 P.3d at 1143 (same). "When deciding whether the parties agreed to arbitrate a certain matter ... courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Brock,* 2023 WL 3481395, at *2 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). And, although the FAA contains several enforcement mechanisms for parties to compel arbitration pursuant to a valid agreement to arbitrate, it is axiomatic that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (internal quotations omitted); *AT&T Tech., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648 (1986) ("[B]ecause arbitration is a creature of contract, a party cannot be forced to arbitrate any issue he has not agreed to submit to arbitration.") (internal quotations omitted); *Local 5–857 Paper, Allied–Industrial, Chemical and Energy Workers Int'l Union v. Conoco, Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003) (same). Like other contracts, arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

In determining whether a given dispute falls within the scope of a contractual arbitration

provision, courts first determine whether the arbitration clause is broad or narrow. *Chelsea Family Pharmacy, PLLC v. Medco Heath Solutions, Inc.*, 567 F.3d 1191, 1196 (10th Cir. 2009). "Under a narrow arbitration clause, a dispute is subject to arbitration only if it relates to an issue that is on its face within the purview of the clause, and collateral matters will generally be beyond its purview." *Id.* at 1262. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it. *Cummings v. FedEx Ground Package System, Inc.*, F.3d 1258. 1261 (10th Cir. 2005).

**1. Defendants Have Failed to Present Evidence That No Genuine Dispute of Facts Exists.**

Although the Federal Arbitration Act ("FAA") provides a procedure for parties to compel arbitration, "the existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked [and the] party attempting to compel arbitration carries the burden of demonstrating a valid arbitration agreement." *Fundamental Admin. Servs., LLC*, 504 F.App'x at 698 (10th Cir. 2012) (internal quotations omitted). If the party seeking arbitration comes forward with "evidence sufficient to demonstrate an enforceable arbitration agreement … the burden [] shifts to [p]laintiffs to raise a genuine issue of material fact as to the making of the agreement." *Vernon v. Qwest Communs. Int'l,* 857 F.Supp.2d 1135, 1148 (D. Colo. 2012) (internal quotations omitted). When the parties dispute the existence of an agreement to arbitrate, a court may grant a motion to compel arbitration only if "there are no genuine issues of material fact regarding the parties' agreement." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (quotations omitted); *see also Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61, 67 (D.D.C. 2003) (when considering a motion to compel arbitration, "the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions

pursuant to Fed. R. Civ. P. 56(c)."); *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (noting the defendant's motion to compel arbitration properly assessed under the summary judgment standard). As with summary judgment under Federal Rule of Civil Procedure 56, courts "should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Hancock*, 701 F.3d at 1261; *Aliments Krispy Kernels, Inc., v. Nichols Farms*, 851 F.3d 283, 288-89 (3rd Cir. 2017) (courts should "apply the relevant state contract law to questions of arbitrability, which may be decided as a matter of law only if there is no genuine issue of material fact when viewing the facts in the light most favorable to the nonmoving party.").

As discussed in further detail below, a genuine issue of material fact exists as to whether Ms. Vaughn's claims arise out of the contract making it unsuitable to send to arbitration. Chase Bank argues that its arbitration agreement encompasses Ms. Vaughn's claims, Ms. Vaughn disagrees. Defendants have failed to produce clear or unmistakable evidence that would suggest that the Parties contractually consented to arbitrate these particular disputes given its narrow arbitration agreement, expressly limited as it is to account services and the DAA agreement. Chase Bank's arbitration provisions were of a narrow nature, and so Defendants' Motion must be denied.

    **2. The Arbitration Provision Does Not Compel Arbitration of Ms. Vaughn's Claims.**

Defendants argue that the DAA's arbitration clause requires Ms. Vaughn to submit all of her claims, regardless of the nature of those claims, to arbitration. *See Motion*, at 7-8. However, Ms. Vaughn never agreed to arbitrate the types of claims alleged in her Complaint, and nowhere in the DAA does it imply that she has done so. No mention of discrimination, tort or other injury claims, or defamation is referenced in the DAA, nor is the arbitration provision authored in a manner broad enough to cover those types of claims.

Defendants also argue that the arbitration provision is valid because Ms. Vaughn assented

to the arbitration provision by her continual use of her Chase account. Defendants cite the case *Anonymous v. JP Morgan Chase & Co.* in which the plaintiff alleged the defendant Chase Bank extended credit to pay for the plaintiff's gambling losses in violation of Article 1, § 9 of the New York State Constitution and New York General Obligation Laws § 5-401, 5-411, and 5-419; and that the plaintiff had paid his outstanding obligation by a minimum payment. *See* Civ. No. 05-2442, 2005 WL 2861589, at *1 (S.D.N.Y. Oct. 31, 2005). In that case, the court agreed that Chase Bank's arbitration provision controlled. However, the court did so only after finding that the plaintiff's claims arose out of his credit card use, rendering the dispute within the scope of the agreement's arbitration clause. *Id*. at 4. The same cannot be said here. In *Anonymous*, unlike Ms. Vaughn's case, a reasonable account-holder could foresee that damages arising from that individual's credit card transactions would fall within the terms of the deposit account, whereas it is not foreseeable to any reasonable Chase Bank member, such as Ms. Vaughn, that the transactions and services described in these agreements would include racial discrimination and false and defamatory accusations to the police. Therefore, Ms. Vaughn's continual use of her account at Chase Bank does not justify compelling arbitration given the narrowness of Chase Bank's arbitration provisions, focusing as they do on account services and the DAA's written terms.

Additionally, the arbitration agreement should not be enforced because it would be unconscionable to compel arbitration of these types of claims. "[W]here it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fair-minded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability." *Univ. Hills Beauty Acad. Inc. v. Mountain States Tel. & Tel. Co.*, 554 P.2d 723, 726 (Colo. App. 1976). Courts in the Tenth Circuit have found that "although not all

adhesion contracts are unconscionable, an adhesion contract is procedurally unconscionable and unenforceable 'when the terms are patently unfair to the weaker party.'" *Laurich v. Red Lobster Restaurants, LLC*, 295 F. Supp.3d 1186, 1212 (D.N.M. 2017). An adhesion contract is a "contract drafted unilaterally by a business enterprise and forced upon an unwilling and often unknowing public for services that cannot be obtained elsewhere. It is generally not bargained for, but is imposed on a take it or leave it basis." *Jones v. Dressel*, 623 P.2d 370 (Colo. 1981).

In this case, the arbitration provision is signed by tens of millions of users, like Ms. Vaughn, who had no warning based on the language of the agreement that they are waiving their rights access the courts on discrimination, tort, defamation, and other non-account related claims. To allow companies like Chase Bank to unliterally, and without clear warning of fair process, modify the terms of or interpretation of an arbitration agreement visits a grave injustice not only on Ms. Vaughn, but the greater public, as other corporations will surely attempt to do the same.

### 3. None of Plaintiff's Claims Arise Out of the Deposit Account Agreement.

The FAA governs an arbitration agreement only to the extent that it compels arbitration of "controvers[ies]" that "aris[e] out of" the "contract" containing the arbitration agreement or the "transaction" evidenced thereby. 9 U.S.C. § 2. A dispute "does not arise out of or in connection with a contract" for the purposes of arbitration "just because the dispute would not have arisen if the contract had never existed." *Int'l Underwriters v. Triple I: Int'l Inv. Inc.*, 533 F.3d 1342, 1347 (11th Cir. 2008). Rather, when determining whether a dispute arises out of an underlying contract for arbitration purposes, some courts generally consider whether the dispute in question was an "immediate, foreseeable result of the performance of contractual duties." *See Hearn v. Comcast Cable Comm'ns, LLC*, 992 F.3d 1209, 1213 (11th Cir. 2021). This articulation of foreseeability, much like the Tenth Circuit's "clear" and "unmistakable" articulation, captures the notion that an

individual must have sufficient warning before committing claims to arbitration. *See Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 780 (10th Cir. 1998).

Courts must evaluate the threshold question of whether the parties consented to submit a particular dispute to arbitration. *See AT&T Tech.*, 475 U.S. at 649. The Tenth Circuit has further held that broad provisions to arbitrate all disputes arising out of or relating to the overall contract do not provide the requisite clear and unmistakable evidence "within the four corners of the [] Agreement that the parties intended to submit the question of whether an agreement to arbitrate exists to an arbitrator." *Riley Mfg. Co.*, 157 F.3d at 780.

In *Communication Workers of America v. Avaya, Inc.*, the plaintiff, Avaya, appealed to the Tenth Circuit a district court's ruling compelling arbitration of its labor dispute with the Communication Workers of America ("CWA") over the legal status of a class of Avaya employees called "backbone engineers." 693 F.3d 1295, 1301 (10th Cir. 2012). The CWA claimed the collective bargaining agreement between the parties required any dispute over the legal status of "backbone engineers" to be resolved in arbitration, while Avaya claimed the parties did not consent to arbitrate their legal status in arbitration. *Id*. The Tenth Circuit found that the record provided forceful evidence that the parties did not contractually consent to arbitrate these particular disputes because it was neither "clear" nor "unmistakable" that this dispute arose under the contract. *Id*. at 1303. Conversely, courts are loathe to require arbitration of discrimination claims unless they are expressly and knowingly waived. For example, in *Winn v. Ensign U-Healthcare Resort of Leawood*, a Title VII plaintiff was compelled to arbitration after the district court found the arbitration agreement clearly included a clause requiring claims related to race discrimination, harassment, or retaliation to be submitted to arbitration. Civ. No. 19-cv-2715, 2020 WL 2849902, at *2 (D. Kan. June 2, 2020) ("Both contracts clearly include a clause requiring claims related to

race discrimination, harassment, or retaliation to be submitted to arbitration… [Plaintiffs] do not dispute and do not raise a genuine issue of material fact that their dispute is covered…").

In this case, Ms. Vaughn's claims do not arise out of her contract with Chase Bank within the meaning of the FAA. For example, Defendants allege that Ms. Vaughn's Section 1981 and CADA claims could not be brought without alleging that the claim involved a transaction and that her allegations are about the account. *See Motion*, at 12. The dispute here, however, does not arise from the contract and is not about Chase's services vis-à-vis its agreement to provide services for that account. Instead, the dispute arose from the racial discrimination she encountered when she entered the Chase branch and Defendant Pelech berated her, forced her to leave the building, called the police on her, and falsely accused her of a crime. Even without the DAA, Ms. Vaughn would have similar claims had she walked into the bank branch, for example, to use the ATM, learn about services, or apply to be a member. *See generally Mikes v. Strauss*, 889 F. Supp. 746, 754 (S.D.N.Y. 1995) (refusing to compel employee to arbitrate qui tam claims because they in no way impinged on her employment status and "[e]ven if plaintiff had never been employed by defendants, assuming other conditions were met, she would still be able to bring a suit against them for presenting false claims to the government.").

In arguing that none of Ms. Vaughn's claims would exist absent the contractual relationship between herself and Chase Bank, Defendants conflate arising out of a contract with arising out of a contractual relationship. *See Motion*, at 10-11. The Sixth Circuit has helpfully differentiated between the two. In *U.S. ex rel. Paige v. BAE Sys. Tech. Sols. & Servs., Inc.*, the defendant sought to compel its former employees to arbitrate claims of whistleblower retaliation because the arbitration agreement between the parties referenced arbitrating "any dispute arising from this Agreement," "any dispute, which arises under the term of this Agreement," and "the dispute." 566

F. App'x 500, 503 (6th Cir. 2014). In reversing the district court, the Sixth Circuit noted that "[r]ead as a whole and in context, it is clear that these three references all refer to the same dispute. Thus, in context, the more general 'any dispute arising from' language must be read to mean "any dispute, which arises under the terms of this Agreement." *Id.* The Chase Bank DAA specifically speaks of servicing accounts and disputes over the "agreement." Nothing in the DAA suggests that the types of claims alleged by Ms. Vaughn fall within its scope. According to the Sixth Circuit:

> A longstanding principle of this Circuit is that no matter how strong the federal policy favors arbitration, 'arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration... An arbitration clause should be interpreted consistent with the terms of the agreement and should be enforced in the same manner as any other privately negotiated contract…we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated. When an arbitration clause by its terms extends only to a specific type of dispute, a court cannot require arbitration of claims that are not covered by the clause…
> …Here, the parties agreed only to arbitrate disagreements that arise under the terms of the Employment Agreement. **If, as BAE urges, this court applies the arbitration clause simply because the dispute concerns the employment relationship, although not arising from the terms of the Employment Agreement, it will have effectively rewritten the parties agreement from 'any dispute arising under the terms of this Agreement' to 'any dispute arising from your employment.' This we may not do.**

*Id.* at 503-04 (internal citations and quotations omitted) (emphasis added).

The key analysis is not whether a contractual relationship existed, but whether it was foreseeable under the DAA that Ms. Vaughn was waiving her right to seek redress in court for the types of claims she has alleged, and in this sense, it was not. Unlike the defendant in *Winn v. Ensign U-Healthcare Resort of Leawood*, nowhere in the DAA or within the language of the arbitration provision contained therein could Ms. Vaughn have foreseen such a waiver. *Cf. Winn*, 2020 WL 2849902, at *2 (plaintiff did not dispute the express language in the employment agreement agreeing to arbitrate race discrimination claims). Like in *Avaya*, "[i]t is not enough for the parties to have an arbitration clause purporting to sweep up all disputes arising from the labor

agreement." 693 F.3d at 1303. The DAA's arbitration provisions unmistakably do not sweep as broadly as Chase Bank argues. Nothing suggests that Ms. Vaughn and Chase Bank contractually consented to arbitrate these particular disputes. Instead, Chase Bank relies on an overbroad interpretation, going well-beyond "the four corners of the contract" referred to by the Tenth Circuit in *Riley Manufacturing Corp.* at the expense of Ms. Vaughn and tens of millions of others. As such, the Court must reject Defendants' call for arbitration in this case.

    **4. Defendant Trina Pelech is Not Entitled to Enforce the Agreement to Arbitrate.**

The DAA's arbitration clause further states that, "[a]rbitration applies whenever there is a Claim between you and us. If a third party is also involved in a Claim between you and us, then the Claim will be decided with respect to the third party in arbitration as well." ECF 19-3, at 26. Chase Bank goes on to define third parties as, "JP Morgan Chase Bank, N.A., all of its affiliates, and all third parties who are regarded as agents or representatives of ours in connection with a Claim." *Id*. Defendants argue that although Defendant Pelech is not a signatory to the DAA, she is nonetheless entitled to enforce its arbitration provisions as a third-party beneficiary based on this language. *Motion*, at 14. For the reasons stated below, Ms. Pelech is not entitled to arbitration.

    **i.    The Parties Did Not Intend to Make Ms. Pelech a Nonsignatory Beneficiary.**

Courts have observed that ordinary principles of contract and agency law may apply to bind a non-signatory to an arbitration agreement. *See, e.g., Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 558 (5th Cir. 2011) (finding the arbitration agreement clearly stated that it only applied to the parties). Courts in the Tenth Circuit have recognized the third-party beneficiary theory as binding a nonsignatory to an arbitration agreement. *See THI of N.M. v. Lovato*, 848 F. Supp.2d 1309, 1326 (D.N.M. 2012) (the issue of whether a non-signatory can be bound by, or compel arbitration under an arbitration agreement is governed by state law). In the context of arbitration,

most commonly it is the non-signing party that seeks to avoid mandatory arbitration. *See, e.g.*, *N.A. Rugby Union LLC v. United States of Am. Rugby Football Union*, 442 P.3d 859, 863-64 (Colo. 2019) (finding nonsignatory not bound by an arbitration agreement); *Ouadani v. TF Final Miles, LLC*, 876 F.3d 31, 39-40 (1st Cir. 2017) (subcontractor's employees were not third-party beneficiaries bound by arbitration agreement against defendant where defendant and plaintiff's employer signed arbitration agreement). However, when a nonsignatory wishes to compel arbitration, the courts look closely at whether said individual qualifies as a beneficiary.

"A third-party beneficiary may enforce a contract only if the parties to that contract intended to confer a benefit on the third party when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to the third party." *Everett v. Dickinson & Co.*, 929 P.2d 10, 12 (Colo. App. 1996). "Such an intent to benefit a third party must be apparent from the construction of the contract in light of all surrounding circumstances, and the intent of the parties is the key inquiry when determining whether a nonsignatory is a third-party beneficiary entitled to enforce the agreement." *Id*. Only if "**the parties**…intended to benefit the non-party," may a nonsignatory bring suit, and then only if "the benefit claimed is a direct and not merely incidental benefit of the contract." *E.B. Roberts Const. Co. v. Concrete Contractors, Inc.*, 704 P.2d 859, 865 (Colo. 1985) (both parties intended to benefit third-party, knowing third-party would post bond, complete the work, and recover compensation for that work as a result) (emphasis added).

Here, there is no indication that Ms. Vaughn and Defendant Chase Bank, the parties to the DAA, intended to benefit Defendant Pelech directly by virtue of the overall agreement. Rather, Defendant Chase Bank sought to confer an incidental benefit on Defendant Pelech and its other employees, unrelated to the rest of the DAA's terms. "A non-party is the specifically intended beneficiary only if the contract clearly expresses an intent to primarily and directly benefit the third

party or a class of persons to which that party belongs." *Calderon v. Sixt Rent a Car, LLC*, Civ. No. 19-cv-62408, 2020 WL 700381, at *9 (S.D. Fla. Feb. 12, 2020). In *Fundamental Administrative Services, LLC v. Patton*, nursing homes and related parties sought to remove a case brought by the representatives of deceased nursing home residents by arguing they were third-party beneficiaries as "affiliates" of an agreement with a non-managing parent company. *See* 504 F.App'x 694, 699 (10th Cir. 2012). In rejecting their motion to compel arbitration, the Court noted they were not third-party beneficiaries, notwithstanding their assertions otherwise, and that "the burden of showing that they are covered by the arbitration agreement, which requires them, as non-signatories, to demonstrate that they are third-party beneficiaries to the contract." *Id.* at 701.

Similarly, in *Calderon v. Sixt Rent a Car*, *supra*, the defendants, two related rental car services, attempted to assert that an arbitration agreement between the plaintiffs and a third-party travel-supplier should be enforced after plaintiffs sued defendants for unauthorized, fraudulent fees. 2020 WL 700381, at *1. The court rejected the request given the lack of privity and the provisions of the agreement, holding that the plaintiffs' lawsuit fell outside of the scope of arbitration because the suit concerned defendants' practices, not those of the third-party provider, and defendants were not beneficiaries of the contract. *See id.*, *aff'd*, 5 F.4th 1204 (11th Cir. 2021).

The arguments against compelling Ms. Vaughn to arbitrate her claims against Defendant Pelech overlap in many ways with those excusing arbitration against Chase Bank. Once again, Ms. Vaughn had no warning that Defendants would interpret racial discrimination, emotional distress torts, or defamation as falling within the narrow scope of Chase Bank's arbitration provisions. This logic would apply as well to claims brought against Ms. Pelech in her individual capacity. But in addition, Defendant Pelech has not shown she is a beneficiary; she does not directly benefit from the contract except incidentally, nor did Chase Bank, let alone Ms. Vaughn, intend her to.

To argue that any current or former employee of Chase Bank's is, regardless of how egregious their conduct, and even if for example, such conduct included physical violence, immune from personal accountability in court merely because of Chase Bank's DAA flies in the face of contract law and greatly undermines access to and the power of the courts. The public policy implications are significant. In essence, Chase Bank argues its employees are immune from suit for any personal conduct while employed by the Bank, no matter how outrageous and unlawful.[2] Such an argument is not well taken. It vastly expands the operation of arbitration agreements and peremptorily circumvents a whole host of laws promising individuals access to their day in court. Therefore, Ms. Pelech is not entitled to compel arbitration.

## CONCLUSION

Chase Bank's sweeping interpretation of its arbitration agreement harms not only Ms. Vaughn but implicates the rights of millions of others, none of whom received notice that they were waiving their rights to access the courts for a vast number of claims against not only the bank but all its employees. An agreement to forego court and subject claims to arbitration must be clear and unmistakable. For all the reasons above, the Court should deny Defendants' Motion.

---

[2] If taken at face value, Defendant Chase Bank could use its arguments to deny its members their day in court against *any* defendant even if the bank's employee punched or shot a member, so long as the violence took place while the member was accessing their account or transacting at the bank. According to Chase, such unlawful acts ***even against the individual perpetrating them***, would be subject to arbitration merely by virtue of the DAA with the bank, which of course, says nothing about bank employees punching or shooting someone as they try to take money out from an ATM. In such cases, courts have found that such conduct falls outside of even broad arbitration provisions, while the arbitration provision here is quite narrow. The same courts have refused to send claims against ***the employer*** to arbitration, let alone claims against the individual who perpetrated the unlawful acts. *See, e.g.*, *Jones v. Halliburton Co.*, 583 F.3d 228, 237 (5th Cir. 2009) ("Just because an assailant's actions happen to be in violation of his employer's policies, and those policies also govern plaintiff's behavior, does not necessarily render the assault related to plaintiff's employment for purposes of arbitration.").

DATED: November 16, 2023

                              RATHOD | MOHAMEDBHAI LLC

                              <u>*s/ Iris Halpern*</u>
                              Iris Halpern
                              Crist Whitney
                              2701 Lawrence Street
                              Denver, CO 80205
                              (303) 578-4400
                              ih@rmlawyers.com
                              cw@rmlawyers.com

                              *ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2023, the foregoing Plaintiff's Response to Defendant's Motion to Compel Arbitration and Stay Proceedings was filed with the Clerk of the Court using the CM/ECF system, which serve the following:

Naomi G. Beer
April C. Connally
Greenberg Traurig, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
(303) 572-6500
beern@gtlaw.com
april.connally@gtlaw.com

*ATTORNEYS FOR DEFENDANTS*

                 *s/ Iris Halpern*
                 Iris Halpern